UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JEFF HOLDEN
420 Columbus Avenue
Brillion, Wisconsin 54110

      Plaintiff,

v.

WAUPACA ELEVATOR COMPANY, INC.
1726 North Ballard Road, Suite 1
Appleton, Wisconsin 54911

      Defendant.

Case No.: 18-cv-1348

**JURY TRIAL DEMANDED**

# COMPLAINT

COMES NOW Plaintiff, Jeff Holden, by his counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), and these claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant resides and/or operates its business in the Eastern District of Wisconsin and the unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

**PARTIES AND COVERAGE**

4. Plaintiff, Jeff Holden, is an adult male resident of the State of Wisconsin with a post office address of 420 Columbus Avenue, Brillion, Wisconsin 54110.

5. Defendant, Waupaca Elevator Company, Inc., was, at all material times herein, a commercial entity with a principal address of 1726 North Ballard Road, Suite 1, Appleton, Wisconsin 54911.

6. Defendant manufactures, installs, and repairs residential and commercial elevators, lifts, and dumbwaiters in the State of Wisconsin.

7. A division of Defendant, commonly known as its Wisconsin Sales and Service Division, performs the installation and servicing of the elevators, lifts, and dumbwaiters.

8. During the relevant time periods as stated herein, Defendant was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

9. During the relevant time periods as stated herein, Defendant's annual dollar volume of sales or business exceeded $500,000.

10. During the relevant time periods as stated herein, Defendant employed more than two (2) full-time employees.

11. During the relevant time periods as stated herein, Defendant was an "employer" as that term is defined under the FLSA and the WWPCL.

12. During the relevant time periods as stated herein, Plaintiff was "employed" by and/or an "employee" of Defendant as these terms are defined under the FLSA and the WWPCL.

13. During the relevant time periods as stated herein, Plaintiff was engaged in commerce or in the production of goods for commerce.

## GENERAL ALLEGATIONS

14. On or about August 8, 2016, Defendant hired Plaintiff into the position of Lead Elevator Installer.

15. In his position of Lead Elevator Installer with Defendant, Plaintiff reported directly to Leonel Lopez, Manager, who reported directly to Rubhen Rice, General Manager.

16. In his position of Lead Elevator Installer with Defendant, Plaintiff's primary job duty was travelling to Defendant's customers and performing manual labor related to installing and/or repairing Defendant's elevators, lifts, and dumbwaiters.

17. During the entirety of Plaintiff's employment with Defendant, Defendant compensated Plaintiff on an hourly basis and/or with an hourly rate of pay.

18. During the entirety of Plaintiff's employment with Defendant, Plaintiff was a non-exempt employee for FLSA and WWPCL purposes.

19. During Plaintiff's employment with Defendant, Plaintiff frequently worked in excess of forty (40) hours per workweek.

20. During Plaintiff's employment with Defendant, Defendant, particularly Lopez, knew or had knowledge that Plaintiff was frequently worked in excess of forty (40) hours per workweek in furtherance of his job duties as Lead Elevator Installer.

21. During Plaintiff's employment with Defendant, Defendant, particularly Lopez, frequently directed Plaintiff to perform more than forty (40) hours of work per workweek in furtherance of his job duties as Lead Elevator Installer.

22. During Plaintiff's employment with Defendant and in addition to Plaintiff's hourly rate of pay, Defendant agreed to compensate Plaintiff with a $30.00 per diem each time Plaintiff had an overnight stay (in conjunction with his job duties as Lead Elevator Installer) and/or when he worked at least a twelve (12) hour shift.

23. Upon information and belief, Defendant's workweek for FLSA and WWPCL purposes was Sunday through Saturday.

24. During Plaintiff's employment with Defendant, Defendant compensate Plaintiff on a bi-weekly basis via check.

25. During Plaintiff's employment with Defendant and from approximately August 2016 to March 2017, Plaintiff recorded his hours worked each workweek via handwritten timesheets.

26. During Plaintiff's employment with Defendant from approximately August 2016 to March 2017 and when Plaintiff completed recording his hours worked each workweek via his handwritten timesheets, Lopez received and collected Plaintiff's timesheets.

27. During Plaintiff's employment with Defendant and from approximately August 2016 to March 2017, Plaintiff's hours worked as recorded on his weekly handwritten timesheets and as provided to Lopez accurately reflected the vast majority of Plaintiff's hours worked each workweek.

28. During Plaintiff's employment with Defendant from approximately August 2016 to March 2017 and when Lopez received and collected Plaintiff's weekly timesheets, Lopez changed or altered Plaintiff's hours worked to Plaintiff's detriment.

29. During Plaintiff's employment with Defendant and from approximately August 2016 to March 2017, Defendant compensated Plaintiff based on Lopez's changed or altered hours worked by Plaintiff each workweek.

30. During Plaintiff's employment with Defendant from approximately August 2016 to March 2017 and when Lopez changed or altered Plaintiff's hours worked each workweek to Plaintiff's detriment after receiving and collecting Plaintiff's weekly timesheets, it resulted in Defendant not compensating Plaintiff for all hours worked in a workweek, including at an overtime rate of pay for those hours worked in excess of forty (40) hours in a workweek.

31. During Plaintiff's employment with Defendant and beginning in approximately March 2017, Defendant implemented an electronic form of employee timekeeping called "CBIZ," which was a software/web-based timekeeping program.

32. During Plaintiff's employment with Defendant and from approximately March 2017 until the end of Plaintiff's employment in August 2018, Plaintiff electronically recorded his hours worked each workweek via CBIZ.

33. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018, Plaintiff's hours worked each workweek as electronically recorded via CBIZ accurately reflected the vast majority of Plaintiff's hours worked each workweek.

34. During Plaintiff's employment with Defendant from approximately March 2017 to August 2018, Plaintiff could not change or alter his hours worked each workweek after they were electronically recorded via CBIZ.

35. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018, Lopez had access to Plaintiff's weekly recorded hours of work via CBIZ.

36. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018, Lopez reviewed Plaintiff's weekly recorded hours of work via CBIZ.

37. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018, Lopez changed or altered Plaintiff's hours worked each workweek as electronically recorded and reflected via CBIZ to Plaintiff's detriment.

38. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018, Defendant compensated Plaintiff based on Lopez's changed or altered hours worked by Plaintiff each workweek.

39. During Plaintiff's employment with Defendant and from approximately March 2017 to August 2018 and when Lopez changed or altered Plaintiff's hours worked each workweek as electronically recorded and reflected via CBIZ to Plaintiff's detriment, it resulted in Defendant not compensating Plaintiff for all hours worked in a workweek, including at an overtime rate of pay for those hours worked in excess of forty (40) hours in a workweek.

40. During Plaintiff's employment with Defendant, Lopez occasionally instructed Plaintiff to perform compensable work "off-the-clock," which is why Plaintiff's hours worked each workweek as recorded via his handwritten timesheets and/or electronically via CBIZ did not always accurately reflect all of Plaintiff's hours worked each workweek.

41. During Plaintiff's employment with Defendant, for example, Lopez's most common directive for Plaintiff to perform compensable work "off-the-clock" was when Plaintiff travelled to Defendant's Appleton, Wisconsin location from a job site to retrieve items or materials and then travel back to the job site to fix a problem or error. Lopez often told Plaintiff

regarding his travel time and time spent fixing the problem or error: "We're not paying you for that," or words to that effect. In situations like these, Plaintiff did not record these hours worked via his handwritten timesheets and/or electronically via CBIZ.

42. During Plaintiff's employment with Defendant, Don M. was an employee of Defendant who worked in its Accounting Department, and Gary Z. who worked in its Human Resources Department.

43. During Plaintiff's employment with Defendant and when Lopez changed or altered Plaintiff's hours worked each workweek, Lopez subsequently provided Defendant's Accounting Department with Plaintiff's changed or altered hours worked for payment.

44. During Plaintiff's employment with Defendant and regarding his weekly compensation, Don M. often told Plaintiff, "I just do whatever Leo gives me," or words to that effect.

45. During Plaintiff's employment with Defendant, Plaintiff frequently verbally complained to Defendant, including but not limited to Lopez, Don M., and Gary Z., about not receiving compensation for all of his hours worked each workweek, including at an overtime rate of pay.

46. During Plaintiff's employment with Defendant, Plaintiff frequently verbally complained to Defendant, including but not limited to Lopez, Don M., and Gary Z., about "missing overtime pay" from his paychecks.

47. During Plaintiff's employment with Defendant and during the workweek of July 15, 2018, for example, Plaintiff performed more than approximately fifty (50) hours of compensable work and recorded same electronically via CBIZ, yet Defendant compensated him for only approximately forty-two and a half (42.5) hours of work that workweek.

48. During Plaintiff's employment with Defendant, Defendant agreed to compensate Plaintiff with per diems at a previously agreed-upon rate of pay, thirty dollars ($30.00), if he had to stay overnight in furtherance of his job duties and/or when he worked at least a twelve (12) hour shift.

49. During Plaintiff's employment with Defendant, Defendant frequently did not compensate Plaintiff with the aforementioned per diems at the aforementioned previously agreed-upon rate of pay when Plaintiff had to stay overnight in furtherance of his job duties and/or when he worked at least a twelve (12) hour shift.

50. During Plaintiff's employment with Defendant and subsequent to approximately March 2017, Defendant, via CBIZ, began automatically deducting thirty (30) minutes per work day from Plaintiff's timesheets for an unpaid lunch break or meal period.

51. During Plaintiff's employment with Defendant and subsequent to approximately March 2017, Plaintiff rarely took a work-free thirty (30) consecutive minute lunch break or meal period during any given work day.

52. During Plaintiff's employment with Defendant and subsequent to approximately March 2017, Plaintiff verbally complained to Gary Z. about not being compensated for thirty (30) minutes of compensable work each work day because Defendant was automatically deducting thirty (30) minutes from his timesheets each workday for an unpaid lunch break or meal period. Gary Z. responded, "There's nothing I can do about it. That's just how the system is set up," or words to that effect.

53. During Plaintiff's employment with Defendant and subsequent to approximately March 2017, Defendant did not have a known written or unwritten policy, procedure, or practice for employees, including Plaintiff, to complain to Defendant about wage or compensation issues or

about performing compensable work during their unpaid thirty (30) minute lunch break or meal period.

54. During Plaintiff's employment with Defendant and prior to Defendant's termination of Plaintiff, Defendant had not disciplined Plaintiff, either verbally or in writing.

55. On or about August 13, 2018, Plaintiff verbally complained to Don M. that he (Plaintiff) was missing overtime hours and per diems from his last few paychecks and requested a copy of his timesheets and per diem sheets.

56. On or about August 13, 2018, Plaintiff verbally complained to Gary Z. that he (Plaintiff) was missing overtime hours and per diems from his last few paychecks and that he (Plaintiff) would be discussing these issues with Lopez once he (Plaintiff) was able to determine how much unpaid compensation he was owed.

57. Subsequent to August 13, 2018, but prior to August 16, 2018, Don M. and/or Gary Z. informed Lopez that Plaintiff had complained about missing overtime hours and per diems from his last few paychecks, that he had requested a copy of his timesheets and per diem sheets, and/or that he (Plaintiff) would be discussing these issues with Lopez once he (Plaintiff) was able to determine how much unpaid compensation he was owed.

58. On or about August 16, 2018, Lopez confronted Plaintiff and stated, "Why'd you go over my head?" Plaintiff assumed he knew what Lopez was referring to, and responded that he (Plaintiff) noticed that overtime hours and per diems were missing from his last few paychecks. Lopez stated, "It was only thirty bucks," or words to that effect. Plaintiff responded, "No, it wasn't. I'm missing more per diems and overtime pay from my paycheck than that," or words to that effect. Visibly agitated and annoyed, Lopez raised his voice and gestured: "I've had it up to here with you. You think this is how it is. Do your fucking job!"

59. On or about August 17, 2018 was Plaintiff's scheduled day off from work at Defendant.

60. On or about August 17, 2018, Plaintiff verbally asked Gary Z. about his missing overtime hours and per diems from his last few paychecks. Gary Z. responded, "I can't do anything for you until Leo approves it," or words to that effect. Plaintiff acknowledged this, and told Gary Z. that he would talk to Leo about this next Monday, August 20. Plaintiff asked Gary Z. to be in attendance for the discussion, which Gary Z. agreed to do.

61. On or about August 20, 2018, Defendant, specifically Lopez, terminated Plaintiff's employment.

62. On or about August 20, 2018 and when Plaintiff arrived to work at Defendant in the morning, Plaintiff asked Lopez if he (Plaintiff) could talk to Lopez about his missing overtime hours and per diems from his last few paychecks. Lopez turned to Plaintiff and stated simply, "We're letting you go." Plaintiff asked why, to which Lopez responded, "I'm sick of arguing with you about this," or words to that effect, referring to Plaintiff's verbal complaints about his missing overtime hours and per diems from his last few paychecks.

63. During Plaintiff's employment with Defendant, Defendant suffered or permitted Plaintiff to work without appropriately and lawfully compensating him for all hours worked in a workweek, including but not limited to, at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek.

64. During Plaintiff's employment with Defendant, Defendant suffered or permitted Plaintiff to work without appropriately and lawfully compensating him with per diems at a previously agreed-upon rate of pay.

65. During Plaintiff's employment with Defendant, Defendant suffered or permitted Plaintiff to work without appropriately and lawfully compensating him for on-duty meal periods.

66. During Plaintiff's employment with Defendant, Plaintiff's paychecks did not properly or lawfully compensate him for all hours worked in a workweek, including those hours worked in excess of forty (40) hours in a workweek.

67. Defendant knew or should have known that Plaintiff must be compensated for all hours worked (and for all hours Defendant suffered or permitted him to work) in a workweek, including at an overtime rate of pay for hours worked in excess of forty (40) in a workweek and at a previously agreed-upon rate of pay, in accordance with the FLSA and WWPCL.

68. Defendant had a statutory duty to comply with the FLSA and WWPCL and to remedy FLSA and WWPCL violations of which it was aware and/or of which it should have been aware.

69. Defendant owe Plaintiff earned and unpaid wages, including at an overtime rate of pay, for work performed during Plaintiff's employment with Defendant for which Plaintiff was not properly and lawfully compensated, plus an equal amount for liquidated damages, in an amount to be determined.

### FIRST CAUSE OF ACTION – FLSA VIOLATIONS
### (OVERTIME PAY – TIMESHAVING)

70. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

71. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

72. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq.*

73. Defendant intentionally violated the FLSA by failing to compensate Plaintiff with overtime premium pay for each hour worked in excess of forty (40) hours in a workweek.

74. Defendant's failure to properly and legally compensate Plaintiff for all compensable work performed was willfully perpetrated. Defendant has neither acted in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime wages as described above pursuant to Section 216(b) of the FLSA. Alternatively, should the Court find that Defendant acted reasonably and with good faith in failing to pay overtime wages, Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

75. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Plaintiff by Defendant.

76. Plaintiff is entitled to damages equal to the overtime compensation due and owing to him within the three (3) years preceding the date of filing of the Complaint, ECF No. 1, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA and otherwise engaged in wrongful conduct that prevented Plaintiff from asserting his claims against Defendant.

77. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages.

## SECOND CAUSE OF ACTION – FLSA RETALIATION

78. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

79. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et. seq.*

80. Plaintiff's verbal complaints regarding his overtime hours of work, as stated herein, constituted "filing a complaint" within the meaning of the FLSA.

81. Defendant understood Plaintiff's verbal complaints regarding his overtime hours of work, as stated herein, to be assertions of his rights provided and protected by the FLSA.

82. Defendant violated the FLSA, 29 U.S.C. § 215(a)(3), by terminating Plaintiff's employment because he made a complaint against Defendant relating to its alleged violations of the FLSA.

83. Defendant intentionally retaliated against Plaintiff by terminating his employment for exercising his rights under the FLSA, 29 U.S.C. § 201 et seq.

84. The FLSA, 29 U.S.C. § 216(b), makes an employer who violates 29 U.S.C. § 215(a)(3) liable for such legal or equitable relief as may be appropriate to effectuate the purposes of Section 215(a)(3), including without limitation: reinstatement, lost wages and other employment benefits, and an additional equal amount as liquidated damages.

85. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful Plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages.

## THIRD CAUSES OF ACTION – WWPCL VIOLATIONS
## (OVERTIME PAY – TIMESHAVING; FAILURE TO PAY AN
## AGREED-UPON WAGE; AND ON-DUTY MEAL PERIODS)

86. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

87. At all times material herein, Plaintiff was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

88. At all times material herein, Defendant was an employer of Plaintiff within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

89. At all times material herein, Defendant employed Plaintiff within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

90. At all times material herein, Plaintiff regularly performed activities that were an integral and indispensable part of his principal activities without receiving compensation for these activities, including at an overtime rate of pay and at a previously agreed-upon rate of pay.

91. During Plaintiff's employment with Defendant, Plaintiff worked hours in excess of forty (40) per workweek for which he was not compensated with overtime premium pay.

92. During Plaintiff's employment with Defendant, Defendant failed to compensate Plaintiff for all hours worked and work performed, including for all hours worked and work performed at his normal and previously agreed-upon regular rate of pay.

93. During Plaintiff's employment with Defendant, Defendant failed to compensate Plaintiff at an agreed-upon wage or rate of pay, as defined in Wis. Stat. § 109.01(3), by failing to compensate Plaintiff with previously agreed-upon per diems for an overnight stay and/or when he worked at least a twelve (12) hour shift.

94. At all times material herein, Wis. Admin. Code § DWD 274.02(3) was applicable to Plaintiff's employment with Defendant, which states: "The employer shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work. Any meal period where the employee is not free to leave the premises of the employer will also be considered an on-duty meal period."

95. Often during Plaintiff's employment with Defendant, Defendant did not provide Plaintiff with a rest break and/or meal period during the workday that was at least thirty (30) consecutive minutes free from work. Despite this, Defendant automatically deducted thirty (30) minutes of compensable work time from Plaintiff's timesheets each work day, and Defendant failed to count or consider Plaintiff's rest breaks and/or meal periods during the workday as on-duty meal periods, which were compensable work time under Wis. Admin. Code § DWD 274.02(3).

96. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

97. As set forth above, Plaintiff sustained losses in compensation as a proximate result of Defendant's violations. Accordingly, Plaintiff seeks damages in the amount of his unpaid compensation, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable

relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Plaintiff may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

98. Plaintiff seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing reimbursement for unpaid wages, including but not limited to overtime wages, lost wages (back pay), agreed-upon wages, on-duty meal periods, and pre-judgment and post-judgment interest, and for all times spent performing compensable work for which Plaintiff was not properly paid as provided under the FLSA and WWPCL;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3. Grant to Plaintiff liquidated damages against Defendant; and

4. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 31st day of August, 2018

        WALCHESKE & LUZI, LLC
        Counsel for Plaintiff

        **s/ *Scott S. Luzi***
        James A. Walcheske, State Bar No. 1065635
        Scott S. Luzi, State Bar No. 1067405
        David M. Potteiger, State Bar No. 1067009

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com